# Exhibit "A"

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CASE NO. 1:25-cv-12299-ADB

ROCKEFELLER PHOTOS, LLC,

     Plaintiff,

v.

BSTON PIZZA, INC. d/b/a BOSTON PIZZA
GRILL,

     Defendant.

_____

### <u>DECLARATION OF REBECCA JONES</u>

Rebecca Jones does hereby declare pursuant to 28 U.S.C. § 1746:

1.      I am over the age of 18 and otherwise competent to testify. I make the following statements based on personal knowledge.

2.      I am the Director, Intellectual Property at Rockefeller Photos, LLC ("<u>Plaintiff</u>").

3.      Plaintiff is a premier provider of photography and videography in the highly-competitive food and beverage industry. By offering access to tens of thousands of photographs/videos, Plaintiff provides businesses with the opportunity to build brand association/recognition through the use of media tailored to their needs.

4.      Prepared Food Photos, Inc. f/k/a Adlife Marketing & Communications Co., Inc. ("<u>Prepared Food Photos</u>") is one of the customers/photography agencies represented by Plaintiff. Through its staff of professional photographers, Prepared Food Photos created and owns approximately 18,000 food-related photographs for use by supermarkets, ad agencies, and other professionals needing access to an extensive library of quality photographs.

5. Plaintiff offers to license its client's photographs via a monthly subscription which provides access to/license of the entirety of its client's image library.

6. In late 2016 or early 2017, Rockefeller Photos' customer began offering its library of professional images at a monthly subscription fee of $499.00. Later in 2017, the monthly subscription rate increased to $999.00.

7. As of the current date, Plaintiff offers the subject library of images to license at a minimum monthly fee of $999.00, with certain subscribers paying more than such amount (generally due to the size/reach of such customer) and certain legacy subscribers (who have remained subscribers for 3+ years) paying less than the $999.00 per month.

8. The standard licensing terms for the subject library of photographs require a minimum of a twelve (12) month licensing commitment to avoid scenarios whereby a licensee pays for one (1) month of access, downloads the entire library of 20,000+ photographs, and immediately terminates the license agreement.

9. On December 12, 2024, Plaintiff and its above-named customer executed an Agency Agreement for the Licensing of Rights Managed Works (the "Agency Agreement") whereby such above-named customer conveyed to Plaintiff the "unrestricted, exclusive right to distribute, License[1] and/or exploit the Work[2]s in the Territory[3] through Agency[4]." The Agency Agreement likewise grants further exclusive rights as follows:

---

[1] "License" is defined in the Agency Agreement as "the marketing, grant, lease, sale, use or other exploitation of reproduction rights to a Work or any derivative rights thereof."
[2] "Works" is defined in the Agency Agreement as "all photographic, video, and/or artistic matters including but not limited to digital files, original transparencies, duplicates, negatives, prints, positives or compilations of any of the foregoing items…."
[3] "Territory" is defined in the Agency Agreement as "world-wide without exception."
[4] Plaintiff is defined in the Agency Agreement as the "Agency" and Prepared Food Photos is defined as the "Customer."

**6.2.** Customer grants Agency the exclusive use rights to the Works, such rights not being limited in substance or geographical scope, as well as the right to sub-license the submitted Works. They include, in particular, the right to copy works in whole or in part, the right to reproduce, exhibit, disseminate, modify, adapt or publish the works. Such rights may be exercised through all analogue or digital exploitation and marketing channels, in particular via print media, websites, other electronic formats, mobile devices, television, movies and exhibitions, and may be used for any purpose, especially for advertising, sales promotion, marketing in and on products, corporate communications, press articles, press statements, brochures, reports, decoration, consumer use, programs or films. This also includes types of use that only become technically feasible or economically exploitable in the future.

**6.3.** Agency shall have the exclusive right to authorize the making of copies of the Works and/or distribute copies of the Works to the public by rights-managed license, and to authorize and control the display of those works publicly to news, advertising, media, or any other sources. Customer understands that he/she/it is conveying these exclusive rights to Agency during the terms of this Agreement and any renewals thereof. Per 17 U.S.C. § 501(b), Agency will exclusively own and hold Customer's distribution, reproduction, and display rights in the Works, each of which is an exclusive right under § 106 of the Copyright Act. This Agreement functions as an exclusive transfer of an exclusive right per § 106 of the Copyright Act.

10.    The Agency Agreement likewise conveys "the exclusive right to pursue infringement claims for violations of exclusive copyright interests granted to the Agency, whether such infringements commenced prior to execution of this Agreement or during the term of this Agreement."

11.    Generally stated, the bulk of subscribers to the subject image library are professional ad agencies that develop weekly ads/grocery store websites for their own 'end users' (i.e., grocery stores, meat/dairy sellers, etc.).

12.    The subject image library is licensed in its entirety rather than allowing individual photograph licenses as doing so diminishes the value of the adopted subscription model. The licensees of the subject image library receive semi-exclusivity – Plaintiff and its customer know exactly what ad agencies, grocery stores, etc. have access to the subject library and can assure customers that a competitor down the street will not be using the same photograph(s) in its own

weekly ads, circulars, internet marketing, etc. Subscribers often spend tens (if not hundreds) of thousands of dollars publishing weekly ads and developing marketing campaigns to advertise their products/services.

13.     The subject library of photographs was created over a 15 – 20 year period of time. Plaintiff's customer has employed professional staff photographers and likewise utilizes other professional photographers (on a work-for-hire basis), all of which specialize in high-end product/food photography. All of these photographers were provided specific instructions with respect to the customer's vision/overall composition requirements – namely, that food/product photography should result in images/meals accessible to the general public that an average family could prepare for a meal. For any image (including the Work), such photographers spend hours using specialized lighting/equipment and take dozens (if not hundreds) of images before identifying 1 – 2 for inclusion in the image library. For any given photograph, Plaintiff's customer then has costs associated with post-processing the image in specialized editing software such as Adobe Photoshop, Adobe Lightroom, and/or other programs so that the desired end-look of the photograph can be achieved, for their proper use in print and digital media advertising.

14.     Because Plaintiff markets the subject library on the basis of its semi-exclusivity, the copying and publishing of individual photographs by non-licensees greatly reduces the value of the library. Plaintiff and/or its customer employ multiple full-time employees to locate and identify such nonauthorized uses in an effort to ensure exclusivity to legitimate licensees. These expenses (payroll, etc.) are incurred to protect the integrity of the subject library.

15.     The standard terms for licensing the subject library include a limited, non-transferable license for use of any photograph by the customer only. The license terms make clear that all copyright ownership remains with the licensor and that licensees are not permitted to

transfer, assign, or sub-license any of the photographs in the library to another person/entity.

16.    When an existing (i.e., published and available for viewing on the internet) infringement is discovered of one of any photograph in the image library, Plaintiff (and formerly its customer) creates an infringement notice on the date of discovery or within 1 – 2 days thereafter. The infringement notice identifies the date of discovery, displays the subject photograph, and displays a screenshot of the infringer's alleged use together with a website URL (if available) where the infringement is located.  True and correct copies of such infringement notices with respect to the Work at issue in this lawsuit are attached hereto as Exhibit "1."

17.    A professional photographer employed by Plaintiff's above-named customer created a photograph titled "WrapRoastBeef001, 02-09-2005" (the "First Photograph"). A copy of the First Photograph is displayed below:



18.    The First Photograph was registered by the above-named customer with the

Register of Copyrights on September 20, 2016 and was assigned Registration No. VA 2-017-741. A true and correct copy of the Certificate of Registration pertaining to the Work is attached to the Complaint as Exhibit A thereto.

19.    A professional photographer employed by Plaintiff's above-named customer created a photograph titled "WrapChickenCaesar002, 10-11-2007" (the "Second Photograph"). A copy of the Second Photograph is displayed below:



20.    The Second Photograph was registered by the above-named customer with the Register of Copyrights on September 1, 2016 and was assigned Registration No. VA -2-015-841. A copy of the Certificate of Registration pertaining to the Second Photograph is attached to the Complaint as Exhibit B thereto.

21.    The First Photograph and the Second Photograph are collectively referred to herein as the "Work."

22.    Plaintiff's above-named customer is the owner of the Work and has remained the owner at all times material hereto.

23.    Through its ongoing diligent efforts to identify unauthorized use of its photographs, Plaintiff and/or its above-named customer discovered Defendant's unauthorized use/display of the Work in November 2022. Following such discovery, Plaintiff and/or its above-named customer notified Defendant in writing of such unauthorized use.

24.    Ultimately, Plaintiff was forced to retain undersigned counsel to pursue this matter. Plaintiff (through counsel) sent (via Federal Express and e-mail) an infringement notice to Defendant to notify it of the impermissible use.  Subsequent thereto, Plaintiff's counsel sent various e-mails and made several phone calls in an attempt to negotiate a reasonable license for the use of the Work, yet these communications went substantially unanswered.

25.    The ability of Defendant to use Plaintiff's work for its own commercial benefit without compensation to Plaintiff greatly impairs the market value of the work, since others competing in that business or in related business areas, will not want to obtain a license to Plaintiff's works if it is already associated with a competing business; and potential licensees of Plaintiff will not want to pay license fees to Plaintiff if they see other commercial enterprises taking and using Plaintiff's photographs for their own commercial purposes without paying any fee at all.

26.    The Work at issue in this lawsuit has lost significant value by the continuing dissemination resulting from Defendant's infringement.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DATED: __11/7/2025_____.

_____
ID n718nbAxBEgn7NbHJjt1o97J

_____
Rebecca Jones

# eSignature Details

| | |
|---|---|
| **Signer ID:** | **n718nbAxBEgn7NbHJjt1o97J** |
| Signed by: | Rebecca Jones (Rockefeller Photos) |
| Sent to email: | rebecca@rockefellerphotos.net |
| IP Address: | 74.103.244.185 |
| Signed at: | Nov 7 2025, 5:23 pm EST |

# Exhibit "1"



PreparedFoodPhotos.com
P.O. Box 1000 • Slatersville, RI. 02876
licensing@PreparedFoodPhotos.com
1-866-609-1548

**Re: Claim Number: 5456372326614094648**
**FRE 408 SETTLEMENT COMMUNICATION**

Wednesday, November 30, 2022

**Company Name**
Boston Pizza & Grill



**Company Address**
535 Columbia Rd,
Dorchester, MA 02125

**Image Name**
WrapChickenCaesar002.

**Company Phone Number**
(617) 265-2222

**Registration Number**
VA0002015841

**URL Containing Image**
https://www.facebook.com/Bostonpizzagrill/





PreparedFoodPhotos.com
P.O. Box 1000 • Slatersville, RI. 02876
licensing@PreparedFoodPhotos.com
1-866-609-1548

**Re: Claim Number: 5456352476614879340**
**FRE 408 SETTLEMENT COMMUNICATION**

Wednesday, November 30, 2022

**Company Name**
Boston Pizza & Grill

**Company Address**
535 Columbia Rd,
Dorchester, MA 02125

**Company Phone Number**
(617) 265-2222

**URL Containing Image**
https://www.facebook.com/Bostonpizzagrill/



**Image Name**
WrapRoastBeef001

**Registration Number**
VA0002017741





PreparedFoodPhotos.com
P.O. Box 1000 • Slatersville, RI. 02876
licensing@PreparedFoodPhotos.com
1-866-609-1548

**Re: Claim Number: 5557317146611397590**
**FRE 408 SETTLEMENT COMMUNICATION**

Monday, March 27, 2023

**Company Name**
Boston Pizza Grill

**Company Address**
535 Columbia Rd,
Dorchester, MA 02125

**Company Phone Number**
(617) 265-2222

**URL Containing Image**
https://www.facebook.com/Bostonpizzagrill/?locale=sr_RS



**Image Name**
WrapRoastBeef001

**Registration Number**
VA0002017741

