UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ROCKEFELLER PHOTOS, LLC, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 25-cv-12299-ADB |
| | * | |
| BSTON PIZZA, INC. d/b/a BOSTON PIZZA GRILL, | * | |
| | * | |
| Defendant. | * | |
| | * | |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

On August 18, 2025, Plaintiff Rockefeller Photos, LLC ("Rockefeller") brought a copyright-infringement suit against Bston [sic] Pizza, Inc. d/b/a Boston Pizza Grill ("Boston Pizza"). Currently before the Court is Rockefeller's motion for a default judgment pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure in which it seeks a judgment consisting of $95,904 in statutory damages for Boston Pizza's alleged infringement of Rockefeller's copyright, $525 in costs, and a permanent injunction restraining Boston Pizza from continuing to reproduce the disputed photographs. [ECF No. 15 ("Mot. Default J.")]. For the reasons stated below, the motion is **GRANTED IN PART**.

## I.    FACTUAL AND PROCEDURAL HISTORY

The following summary of facts is drawn from the Complaint, the well-pleaded allegations of which the Court accepts as true for purposes of this Memorandum and Order.[1]  See Brockton Sav. Bank v. Peat, Marwick, Mitchell & Co., 771 F.2d 5, 13 (1st Cir. 1985) (explaining that after the entry of a default, allegations of fact in the complaint must be taken as true); see also Franco v. Selective Ins. Co., 184 F.3d 4, 9 n.3 (1st Cir. 1999) ("A party who defaults is taken to have conceded the truth of the factual allegations in the complaint as establishing the grounds for liability as to which damages will be calculated.").

Rockefeller sells photographs to businesses in the food and beverage industry.  [ECF No. 1 ("Compl.") ¶ 6].  Prepared Food Photos, Inc. ("PFP") is a photography agency that employs professional photographers to create "food-related photographs for use by supermarkets, ad agencies, and other professionals."  [Id. ¶ 7].  At all times relevant to this action, a written agreement between Rockefeller and PFP granted Rockefeller "certain exclusive rights" in two photographs created by PFP, including the right to reproduce, sell, or license the photographs and the right to pursue copyright infringements of the photographs.  [Id. ¶ 14].  The two photographs at issue are called "WrapRoastBeef001, 02-09-2005," [id. ¶ 8], and "WrapChickenCaesar002, 10-11-2007," [id. ¶ 10].  Both photographs were registered with the Register of Copyrights in September 2016.  [Id. ¶¶ 9, 11].

---

[1] The Court will also rely on the evidence presented in the sworn declaration of Rebecca Jones, director of intellectual property at Rockefeller Photos, [ECF No. 15-1 ("Jones Decl.")], pursuant to Rule 55(b)(2), which permits the Court to consider additional evidence not contained in the Complaint to ascertain information necessary for a default judgment.  See, e.g., Sec. & Exch. Comm'n v. Esposito, 260 F. Supp. 3d 79, 84 (D. Mass. 2017).

Boston Pizza is a restaurant in Dorchester, Massachusetts.  [Compl. ¶ 15].  On November 6, November 12, and December 23, 2022, without acquiring a license or otherwise seeking permission to reproduce the photographs, [id. ¶ 20], Boston Pizza used "WrapRoastBeef001" and "WrapChickenCaesar002" in promotional Facebook posts.[2]  [Id. ¶¶ 17, 18].  At an unspecified time after Boston Pizza made the Facebook posts, Rockefeller "and/or" PFP discovered Boston Pizza's use of the images and notified Boston Pizza in writing that its use of the images was unauthorized.[3]  [Id. ¶ 23]; see also [Jones Decl. ¶ 23 (same)].  Rockefeller also sent "an infringement notice" by FedEx and email, followed by "various e-mails and . . . several phone calls . . . attempt[ing] to negotiate a reasonable license for the use of the [images]."  [Jones Decl. ¶ 24].  The record does not indicate whether those communications contained proof that Rockefeller owned a copyright on the images or whether they advised Boston Pizza that it was required to delete the offending posts if it was unwilling to pay a licensing fee.  Rockefeller's efforts at communication "went substantially unanswered."  [Id.].

On August 18, 2025, Rockefeller filed the Complaint in this action, [Compl.], seeking damages for copyright infringement and a permanent injunction against Boston Pizza, [id. at 11–

---

[2] The motion also links to what Rockefeller alleges to be a 2024 Facebook post by Boston Pizza using "WrapChickenCaesar002."  [Mot. Default J. at 8 & n.6].  Neither the Complaint nor the Jones Declaration alleges that either photograph was used again in 2024, see [Jones Decl. ¶ 23]; [Compl. ¶¶ 17–18], and the Court is unable to ascertain when the post was created from the webpage linked to the motion.  Given that the alleged 2024 post was only referenced in the default judgment motion, and that the evidence for such post is a URL for a page that does not display a date, the Court will not consider the alleged 2024 post further.  The Court notes, for the avoidance of doubt, that its analysis of damages and all other issues would remain the same even if it concluded that Boston Pizza had posted the photograph of a chicken Caesar wrap again in 2024.

[3] Rockefeller's motion itself suggests that these communications began "in 2023," [Mot. Default J. at 7], but neither the Complaint nor the Jones Declaration establishes when the communications began.

12].  On October 8, 2025, upon motion of the Plaintiff, the Clerk entered default against Boston Pizza.  [ECF No. 10].  Rockefeller filed the instant motion for default final judgment on November 7, 2025.  [Mot. Default J.].

## II.    ANALYSIS

### A.    Jurisdiction

The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338.  To enter judgment, the Court must also be able to exercise personal jurisdiction over Boston Pizza, which requires proper service of process.  See Precision Etchings & Findings, Inc. v. LGP Gem, Ltd., 953 F.2d 21, 23 (1st Cir. 1992).  Rockefeller has filed an affidavit of service stating that on August 26, 2025, the server left process at Boston Pizza with an "[u]nknown [m]ale" who refused to give his name but, who, "as Manager," was "authorized by appointment or by law to receive service of process" for Boston Pizza.  [ECF No. 7 at 1].  Although the affidavit does not explain how the server concluded that the unknown male was a manager authorized to receive process, "[a] return of service generally serves as prima facie evidence that service was validly performed."  Blair v. City of Worcester, 522 F.3d 105, 111 (1st Cir. 2008) (first citing O'Brien v. R.J. O'Brien & Assocs., Inc., 998 F.2d 1394, 1398 (7th Cir. 1993); then citing Curley v. Radow, No. 00-cv-10956, 2007 WL 2060015, at *4–5 (D. Mass. July 16, 2007); and then citing Johnson v. Witkowski, 573 N.E.2d 513, 524 (Mass. App. Ct. 1991)).  Because Boston Pizza, which has not appeared in the action, has not "adduced . . . rebuttal evidence to refute any presumption of valid service," id. at 111–12, the Court will accept the affidavit as evidence that service was made in accordance with Rule 4(h)(1) of the Federal Rules of Civil Procedure.[4]

---

[4] The Court notes that Boston Pizza remains free to present evidence that service was not valid in a motion pursuant to Rule 60(b) of the Federal Rules of Civil Procedure.

4

### B.     Copyright Infringement

To establish copyright infringement, a plaintiff must "prove two elements: '(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" Soc'y of Holy Transfiguration Monastery, Inc. v. Gregory, 689 F.3d 29, 39 (1st Cir. 2012) (quoting Situation Mgmt. Sys., Inc. v. ASP. Consulting LLC, 560 F.3d 53, 58 (1st Cir. 2009)). First, "[t]o show ownership of a true copyright, 'a plaintiff must prove that the work as a whole is original and that the plaintiff complied with applicable statutory formalities.'" Id. at 40 (quoting Lotus Dev. Corp. v. Borland Int'l, Inc., 49 F.3d 807, 813 (1st Cir. 1995)). To show ownership and compliance with statutory formalities, a plaintiff must show that the party had either registered its copyright with the U.S. Copyright Office or that the U.S. Copyright Office had refused to register the copyright after the party had delivered the proper deposit, application, and fee to that office. 17 U.S.C. § 411(a); see Cortés-Ramos v. Martin-Morales, 956 F.3d 36, 42–43 (1st Cir. 2020) (affirming dismissal for failure to allege that registration had been obtained prior to suit); Foss v. E. States Exposition, 67 F.4th 462, 468 (1st Cir. 2023) ("[T]he copyright registration requirement set forth in § 411(a) is a precondition to federal copyright infringement suits."). To show that a defendant copied constituent elements of the work that are original, a plaintiff must show that (1) the defendant actually copied the work as a factual matter, and (2) the defendant's copying of the copyrighted material was so extensive that it rendered the infringing and copyrighted works "substantially similar." Cortés-Ramos, 956 F.3d at 41 (quoting T-Peg, Inc. v. Vt. Timber Works, Inc., 459 F.3d 97, 108 (1st Cir. 2006)); accord Tr. Safe Pay, LLC v. Dynamic Diet, LLC, No. 17-cv-10166, 2018 WL 3614799, at *6 (D. Mass. July 27, 2018).

Accepting as true the facts pleaded in the Complaint, Rockefeller has adequately proven its copyright-infringement claim.  The certificates of registration issued to Adlife Marketing & Communications Co., Inc. ("Adlife"), [ECF No. 1-1 at 5]; [ECF No. 1-2 at 2], establish that Adlife owned a valid copyright and complied with the required statutory formalities.  See 17 U.S.C. § 410(c) ("In any judicial proceedings the certificate of a registration made . . . within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright . . . .  The evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court.").  The declaration of Rebecca Jones establishes that PFP is the successor of Adlife and that PFP conveyed exclusive rights to reproduce, distribute, license, and pursue copyright infringement claims related to the images to Rockefeller.  [Jones Decl. ¶¶ 4, 9, 10].  The photographs provided by Rockefeller, [Compl. ¶¶ 8, 10, 17, 18], in turn, establish that Boston Pizza reproduced and distributed the disputed images or substantially similar copies of those images.

### C.    Damages

Pursuant to 17 U.S.C. § 504, a copyright owner may elect to recover either (1) the owner's actual damages plus any profits of the infringer attributable to the infringement or (2) statutory damages.  17 U.S.C. § 504(a)(1)–(2).  Statutory damages are to be "resolved by a discretionary judgment" of the trial court "in the absence of sufficient proof of profits, losses, etc.," Morley Music Co. v. Dick Stacey's Plaza Motel, Inc., 725 F.2d 1, 2 (1st Cir. 1983) (citing Sid & Marty Krofft Television v. McDonald's Corp., 562 F.2d 1178–79 (9th Cir. 1977)), though the discretionary award must be based on "an adequate reference," id. at 3 (citing United Artists Corp. v. Freeman, 605 F.2d 854, 857 (5th Cir. 1979)).  A court may award between $750 and $30,000 in statutory damages per infringed work "as the court considers just," 17 U.S.C. §

504(c)(1), and if the "infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000," id. § 504(c)(2). Commentators have warned that statutory damages can "reward companies that litigate over existing works, which are no longer, or never were, commercially viable" by enabling "monetize[ation] [of] a work through litigation even when the infringement results in nominal damage to the copyright holder."  James DeBriyn, Shedding Light on Copyright Trolls: An Analysis of Mass Copyright Litigation in the Age of Statutory Damages, 19 UCLA Ent. L. Rev. 79, 82 (2012); see also Oren Bracha & Talha Syed, The Wrongs of Copyright's Statutory Damages, 98 Tex. L. Rev. 1219, 1221 & n.6 (2020) (collecting commentary).[5]  Keeping in mind its responsibility to ensure that the damages awarded in a default judgment are supported by the evidentiary record, Fed. R. Civ. P. 55(b)(2)(B), the Court turns to Rockefeller's arguments on statutory damages, which it has elected to recover in place of actual damages, [Mot. Default J. at 13].

The amount of statutory damages is committed to the Court's discretion within the range prescribed by Congress, but the Court must base its award on an "adequate reference."  Morley

---

[5] More specifically, the Copyright Act has proven susceptible to "strategic choice[s]" by certain litigants, Adlife Marketing & Commc'ns Co. v. Buckingham Bros., LLC, 19-cv-0796, 2020 WL 4795287, at *8 (N.D.N.Y. Aug. 18, 2020), who "bring a large volume of copyright litigation over low- or no-value works, namely photographs," Amanda Fischer Adian, Note, Merging Photography's Copyright, 97 N.Y.U. L. Rev. 192, 218–19 (2022), and whose primary focus is "the business of litigation," Malibu Media, LLC v. Doe, 15-cv-4369, 2015 WL 4092417, at *2 (S.D.N.Y. July 6, 2015) (quoting Matthew Sag, Copyright Trolling, An Empirical Study, 100 Iowa L. Rev. 1105, 1108 (2015)).  One strategy employed by such litigants is to "assert[] inflated values [for copyrights] . . . wholly unsupported by the evidentiary record," Otto v. Hearst Commc'ns, Inc., 17-cv-04712, 2020 WL 377479, at *3 (S.D.N.Y. Jan. 23, 2020), such as asserting unreasonable license fees in litigation that may or may not have been viable in the marketplace, id. at *2.

Music Co., 725 F.2d at 3.  Here, Rockefeller claims that "[Boston Pizza]'s inaction and refusal to participate in this lawsuit" has deprived the Court of adequate reference for two reasons: first, because Boston Pizza's default has "suppressed the information necessary to fully calculate [Rockefeller's] actual damages" and second, because it has "prevented [Rockefeller] from discovering any profits received by [Boston Pizza]" as a result of the infringement.  [Mot. Default J. at 13].  In light of this lack of information, Rockefeller offers a seemingly straightforward solution: it charges $999 per month to license its image library, [Jones Decl. ¶ 7], and the "standard licensing terms" require the customer to purchase a license for a "minimum" of one year, [id. ¶ 8], at a cost of $11,988 ($999 per month for twelve months).  Directing the Court to numerous cases in which courts have awarded PFP damages based on multiples of the same annual licensing cost that Rockefeller charges, [Mot. Default J. at 10–13], Rockefeller argues that statutory damages should be calculated from what it would have charged Boston Pizza to license its entire library, on an annual basis, from November 2022 to the present day, [id. at 10].  This adds up to $47,952, [id.], which Rockefeller wants doubled to promote the deterrent and punitive purposes of statutory damages, [id. at 13–14], for a total of $95,904 plus costs, [id. at 15, 18].

The Court is not persuaded that this is a reasonable solution, keeping in mind that this case involves a local pizza parlor using stock photos of two sandwiches.  The Court notes that the almost $100,000 Rockefeller seeks lacks any basis apart from Rockefeller's own licensing fees.  For example, Rockefeller asserts that the value of its subscription model depends on licensees "receiv[ing] semi-exclusivity," meaning that Rockefeller "can assure customers that a competitor down the street will not be using the same photograph(s) in its own [advertising]." [Jones Decl. ¶ 12].  Rockefeller claims to be able to charge thousands of dollars in annual

licensing fees because its customers, who "often spend tens (if not hundreds) of thousands of dollars publishing weekly ads and developing marketing campaigns," [id.], are willing to pay a premium for such exclusivity.  Yet Rockefeller has not identified any paying customers in the vicinity of Boston Pizza or any high-reach customer whose national advertising likely competed with the same target audience as Boston Pizza, or identified any lost business that can be attributed to the dilution of its brand exclusivity as a result of Boston Pizza's use of the two photographs at issue.  Nor has it documented the costs associated with creating images of this type.  Any of these methods, proof of which would be entirely within Rockefeller's control, could have given the Court a reference for the economic harms caused by this kind of infringement.

By contrast, calculating damages based on lost licensing fees for the complete catalog over the entire time period that Boston Pizza used the photos would give Rockefeller a windfall. Ten years ago, another session of this Court was faced with a similar dispute.  In that case, a bar had been caught playing copyrighted songs without a license on two separate occasions. Broadcast Music, Inc. v. PJML, Inc., No. 13-cv-12212, 2015 WL 5737140, at *1 (D. Mass. Sep. 30, 2015).  The Court rejected the idea of basing damages on the cost of licensing the plaintiff's entire music library for the entire period between the two occasions on which the bar was caught playing the copyrighted songs, reasoning that:

> [I]f Defendants had purchased two years of licenses from [Plaintiff] . . . , they would have been able to publicly perform millions of songs countless times.  It does not necessarily follow that a reasonable and just award for the public performance of three songs, one time each, would be [calculated based on the cost of a full license over that period].
>
> . . . [T]he court's task is to craft a damages award that properly vindicates the act of infringement proven in the . . . record.  In completing this task, the court is not bound by [Plaintiff's] pricing model and need not necessarily accept [Plaintiff's] licensing fee as its baseline. . . .

9

It is within the court's discretion to craft an award that it believes is just and reasonable in light of the evidence in the . . . record.  Here, given the limited nature and scope of the proven infringement, the court concludes that a minimum statutory award of $750 per infringement . . . is sufficient to address Defendants' proven wrongful acts and deter would-be infringers.

Id. at *3–4 (emphasis added).  The Court finds this analysis persuasive.  It is true that, unlike a song played over a bar sound system, an image posted on Facebook may remain there in perpetuity, and depending on the circumstances, a single image, shared once, could conceivably amount to a repeated or ongoing infringement of a copyright.  The facts in this case, however, are more akin to the facts of Broadcast Music.  There is no evidence in the record that the posts were republicized, either by Boston Pizza or by the Facebook algorithm, at any time after their initial creation; that the posts continued to be viewed by Facebook users and other internet consumers for the entire period between their initial posting and the present day; or that the posts generated any actual value for Boston Pizza or caused any actual loss to Rockefeller Photos.

If the Court failed to balance the nature of the infringement against the amount of licensing fees sought, it would render the Copyright Act susceptible to exploitation by other plaintiffs, who might plead licensing fees far beyond the market value of their image library or delay suit for violations to allow additional lost licensing fees to accrue.[6]  Here, it would be

---

[6] The Court notes that PFP, formerly known as Adlife, is a serial copyright litigant that has frequently obtained large statutory damages awards for copyright infringements involving nondescript images of food for which there was little or no evidence of actual damages.  See [Mot. Default J. at 10–13 (collecting cases)]; see also Adlife, 2020 WL 4795287, at *10 n.10 ("Adlife is known for being litigious . . . ."); Adlife Mktg. & Commc'ns Co., Inc. v. Karns Prime & Fancy Food, Ltd., No. 21-2074, 2023 WL 179840, at *1, *3 (3d Cir. Jan. 13, 2023) (unpublished) (describing Adlife's extensive and controversial history of copyright infringement actions).  Rockefeller has seemingly adopted the same licensing model and, in support of its motion, relies heavily on past PFP cases.  Though the Court does not impute PFP's history to Rockefeller, it cannot help but note that a pattern of obtaining large statutory damages awards

overly punitive to base damages for three Facebook posts involving two images, each more than three years old,[7] on the annual cost of a license that would have given Boston Pizza much broader rights to eighteen thousand images over a four-year period.

Despite the relatively de minimis infringement, however, statutory damages are warranted. The copyright laws protect the commercial interests of creators and damages awards serve meaningful punitive and deterrent purposes. There must be an adequate remedy against infringers even in situations where there is no readily quantifiable monetary harm to the copyright's owner. In light of the nature of the infringement—a few Facebook posts by a local restaurant—and the fact that Plaintiff has not provided any evidence that it suffered actual financial harm from the infringement, the Court concludes that keying damages off of the statutory minimum will provide an adequate basis for the infringement at issue.[8] Cf. VHT, Inc. v. Zillow Grp., Inc., 69 F.4th 983, 994 (9th Cir. 2023) (upholding statutory damages of $800 per image for each of 2,312 copyrights infringed by the defendant). Specifically, the Court concludes that a minimum statutory damages award of $750 for each of the copyrighted works is adequate to protect Rockefeller's copyright and remedy the infringement by Boston Pizza. E.g., Broadcast Music, 2015 WL 5737140 at *3–4; Arclightz & Films Pvt. Ltd. v. Video Palace Inc.,

_____

untethered from actual damages would appear to be in tension with Congress's directive to ensure that damages awarded be "just." 17 U.S.C. § 504(c)(1).

[7] As noted supra, the Court's analysis would remain the same in light of a fourth Facebook post, made later.

[8] Rockefeller further argues that Boston Pizza's infringement was willful, [Mot. Default J. at 13–14]. "In a case where . . . the court finds . . . that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000." 17 U.S.C. § 504(c)(2). Under the facts of this case, even if the Court were to conclude that Boston Pizza's violation was willful, it would still find a minimum statutory damages award just. See 17 U.S.C. § 504(c)(1) ("[T]he copyright owner may elect . . . to recover, instead of actual damages and profits, an award of statutory damages . . . as the court considers just.").

303 F. Supp. 2d 356, 363 (S.D.N.Y. 2003) ("[T]he deterrence goal of the statutory damages

provision [is] . . . amply served by requiring [the defendant] to pay plaintiffs' reasonable

attorney's fees and costs, in addition to a [minimum] award of statutory damages."); cf.

FameFlynet, Inc. v. Shoshanna Collection, LLC, 282 F. Supp. 3d 618, 627 (S.D.N.Y. 2017)

(rejecting plaintiff's argument for damages of $150,000 and concluding that $750 was the

appropriate award for willful infringement where licensing value of the disputed images was

$75).

### III.    CONCLUSION

Rockefeller's motion for default judgment is **GRANTED IN PART**.  Boston Pizza is

**ORDERED** to pay damages of **$1,500** and costs of **$525** for a total judgment of **$2,025** with

interest as provided by law.  Boston Pizza is **ENJOINED** from further reproduction or

distribution of "WrapRoastBeef001" and "WrapChickenCaesar002" without first acquiring the

legal right to do so.

**SO ORDERED.**

December 15, 2025                                        /s/ Allison D. Burroughs
                                                        ALLISON D. BURROUGHS
                                                        U.S. DISTRICT JUDGE